**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

PATRICIA L. BONANNO,

    Plaintiff,

v.                                                                                  Case No: 5:17-cv-229-Oc-30PRL

NEW PENN FINANCIAL, LLC,
D/B/A SHELLPOINT MORTGAGE
SERVICING,

    Defendant.

## ORDER

In May 2013, Patricia Bonanno's mortgagee initiated a foreclosure action. Three years later, New Penn Financial, LLC ("Shellpoint"), began servicing Bonanno's debt and started collections. Bonanno sued Shellpoint and alleged its collection attempts violated the Fair Debt Collection Practices Act ("FDCPA"), the Telephone Consumer Protection Act ("TCPA"), and the Florida Consumer Collection Practices Act ("FCCPA"). Shellpoint moves to dismiss the Complaint arguing the allegations are insufficient to state claims under the various acts. The Court agrees, in part, with Shellpoint, and concludes its Motion should be granted.

## FACTUAL BACKGROUND

In May 2013, Federal National Mortgage Association ("Fannie Mae") filed a foreclosure action against Bonanno. (Doc. 1, ¶ 22). When a Fannie Mae employee contacted Bonanno in November 2013, Bonanno told the employee that she had legal counsel with respect to her debt and requested all communications about the debt be

directed to her counsel. (Doc. 1, ¶ 23). More than a year later, Bonanno retained her current counsel to represent her in regard to the same debt. (Doc. 1, ¶ 24). Bonanno's current counsel filed an Answer in the foreclosure action in December 2015, "disputing the Debt pursuant to the FDCPA." (Doc. 1, ¶ 25).

In May 2016, Fannie Mae transferred servicing of the debt to Shellpoint. (Doc. 1, ¶ 26). Shellpoint contacted Bonanno via telephone to collect the debt, and Bonanno told Shellpoint she was represented by counsel and that all communications should be directed to him. (Doc. 1, ¶ 28). Shellpoint's employee told Bonanno it would continue to contact her unless Bonanno sent a written cease and desist letter to Shellpoint. (Doc. 1, ¶ 28). Bonanno says Shellpoint continued to contact her, making numerous phone calls to her landline and cellular phones using an automatic telephone dialing system ("ATDS"), a predictive telephone dialing system ("PTDS"), or an artificial or pre-recorded voice ("APV"), and for which she was charged for each call. (Doc. 1, ¶¶ 29, 35–39, 51). Bonanno also claims that Shellpoint sent her correspondence in the mail at least five times. (Doc. 1, ¶¶ 29–33). She alleges that the correspondence referenced late fees and threatened to charge additional late fees on her debt. (Doc. 1, ¶¶ 33–34).

Bonanno then filed this lawsuit, alleging violations of the FDCPA, the TCPA, and the FCCPA. Because the specific violations of each act are relevant to resolve Shellpoint's Motion to Dismiss, the alleged violations are set forth below:

| Count I – Violations of the FDCPA, 15 U.S.C. § 1692 et seq. | | |
|---|---|---|
| Statute | Allegation | ¶ in Cmplt. |
| 1692c(a)(2) | Communicating with Bonanno when Shellpoint knew Bonanno was represented by legal counsel and had counsel's contact information | 56 |
| 1692c(c) | Communicating with Bonanno despite Bonanno requesting that Shellpoint cease and desist communications | 57 |

| 1692d | Engaging in conduct the natural consequence of which is to harass, oppress, or abuse Bonanno | 58 |
|---|---|---|
| 1692d(5) | Causing Bonanno's cellular and landline telephones to ring repeatedly or continuously with the intent to annoy, abuse, or harass | 59 |
| 1692e(2)(A), (10); and 1692f(1) | Falsely representing the character, amount, or legal status of the debt in seeking to claim the existence of some legal right by seeking to assess a late charge on an accelerated debt | 60 |
| 1692f | Using unfair and unconscionable means to collect or attempt to collect a debt from Bonanno | 61 |

| Count II – Violations of the TCPA, 47 U.S.C. § 277 et seq. | | |
|---|---|---|
| Statute | Allegation | ¶ in Cmplt. |
| 227(b)(1)(A)(iii) | Making numerous calls to Bonanno's telephones without express prior consent and without an emergency purpose, and using an ATDS, PTDS, or APV | 68–71 |

| Count III – Violations of the FCCPA, § 559.72 et seq., Fla. Stat. | | |
|---|---|---|
| Statute | Allegation | ¶ in Cmplt. |
| 559.72(18) | Communicating with Bonanno when Shellpoint knew Bonanno was represented by legal counsel and had counsel's contact information | 83 |
| 559.72(7) | Communicating with Bonanno with such frequency as can reasonably be expected to harass Bonanno | 84 |
| 559.72(7) | Engaging in conduct other than communicating with Bonanno that can reasonably be expected to harass Bonanno | 85 |
| 559.72(9) | Claiming, attempting, or threatening to enforce a debt which Shellpoint knows is not legitimate, or assessing the existence of some legal right to collect upon a debt that is more than five years old | 86 |

Importantly, Bonanno also seeks punitive damages and injunctive relief for the FDCPA violations, and compensatory damages for the TCPA violations.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Furthermore, they must accept all

3

factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## **DISCUSSION**

Shellpoint argues the Complaint should be dismissed, a proposition with which the Court agrees in part. Shellpoint raises the following 10 arguments supporting dismissal:

1. Bonanno failed to allege facts—as opposed to bare legal conclusions—showing that the correspondence and phone calls were in connection with collecting a debt, as required for her FDCPA and FCCPA claims;

2. Bonanno's allegations that Shellpoint knew she was represented by counsel for her FDCPA and FCCPA claims appears based on her telling Fannie Mae she had counsel and then improperly imputing that knowledge to Shellpoint;

3. Bonanno failed to allege that she made a written request to Shellpoint to cease and desist communications, as required under the FDCPA;

4. Bonanno's allegations that she received multiple calls is too vague to support her claim that she was harassed in violation of FDCPA and FCCPA without alleging conduct in addition to the volume of calls;

5. Shellpoint properly included late charges based on terms of mortgage, so late charges are not in violation of FDCPA and FCCPA;

6. Bonanno cannot recover punitive damages or receive injunctive relief under the FDCPA;

7. Bonanno's claim that calls to her landline violated TCPA lack sufficient facts showing the calls are covered by the TCPA;

8. Bonanno failed to plead facts—as opposed to bare legal conclusions—that Shellpoint used ATDS, PTDS, or APV in violation of TCPA;

9. Bonanno cannot recover compensatory damages under the TCPA; and

10. Bonanno's TCPA allegations fail because her allegations show the calls were made to collect a debt owed to the United States.

Of these claims, the Court agrees with numbers 1, 3, 4, 6, 7, 8, and 9, disagrees with number 2, and concludes numbers 5 and 10 are inappropriate to address at this stage of the proceedings. The reasons for these conclusions are discussed below.

### 1. Bonanno Failed to Allege Communications Were in Connection with Collecting a Debt

FDCPA sections 1692c–1692f all prohibit certain actions of debt collectors that are in connection with collecting a debt. And the FCCPA prohibits certain actions when collecting consumer debts. § 559.72, Fla. Stat. "That means in order to state a plausible FDCPA claim … a plaintiff must allege, among other things, (1) that the defendant is a

5

"debt collector" and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012).

Shellpoint argues Bonanno failed to satisfy the second prong, and the Court agrees. Bonanno does not plead the contents of the communications she received from Shellpoint, other than to make the threadbare recital that the communications were "for the purposes of collecting on the alleged debt." (*See e.g.* Doc. 1, ¶¶ 29, 32–33, 56, 58, and 83). Such pleading is insufficient because it is incumbent on her to allege sufficient facts so that the Court can determine whether the communications were actually in connection with the collection of a debt. *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014) (analyzing content of communication on review of district court granting motion to dismiss to determine whether letter was communication "in connection with collection of any debt."); and *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 800 (11th Cir. 2016), *cert. denied,* No. 16-8852, 2017 WL 1495145 (U.S. June 26, 2017) (affirming dismissal after analyzing content of communication and determining it was not in connection with collection of any debt, and citing *Reese*, 678 F.3d at 1217). Because the Court concludes Bonanno's Complaint fails to plausibly allege that the communications were in connection with collection of a debt, Bonanno's FDCPA and FCCPA claims in Counts I and III must be dismissed.

2. **Bonanno Alleged Shellpoint Knew She Was Represented by Counsel**

Notwithstanding that the FDCPA and FCCPA claims are being dismissed, the Court concludes Bonanno sufficiently alleged facts that Shellpoint knew she was represented by counsel. In paragraphs 28–29, Bonanno alleges she informed a Shellpoint employee who called her that she was represented by legal counsel in respect to the debt, and that

Shellpoint continued to contact her directly thereafter. Bonanno further alleges that she had told Fannie Mae she was represented and provided information about who her counsel was for purposes of the debt. These facts, accepted as true, are sufficient for Bonanno to state a cause of action under section 1692c and section 559.72(18), subject to Bonanno being able to show that Shellpoint is a debt collector and the communication was in connection with collection of a debt.

### 3. Bonanno Failed to Allege She Provided Cease and Desist Notice in Writing

Section 1692c of the FDCPA requires a debt collector to cease communicating with a debtor about a debt when the debtor provides notice "in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer." Bonanno argues her Answer in the Fannie Mae foreclosure action satisfied the written notice requirement, and that she verbally told Shellpoint that she wished them to cease communications. (Doc. 1, ¶¶ 25, 31). The Court disagrees.

First, Bonanno's claim that her Answer satisfies section 1692c(c) is unavailing. Bonanno's Answer from the foreclosure case is not attached to the Complaint nor incorporated into it.[1] And the Complaint does not allege that her Answer stated that she refused to pay the debt or that she wished the debt collector to cease communications; instead, she alleges she filed an Answer "which contained language disputing the Debt

---

[1] Even if the Court were to consider the alleged excerpt of the Answer that Bonanno includes in her Response (Doc. 23, p. 8), the Court would reach the same result. The excerpt again only provides that Bonanno disputes the debt and Fannie Mae's legal right to collect it. That is not the same as stating she refuses to pay the debt or requesting that Fannie Mae cease and desist communications regarding the debt. The Court also has doubts as to whether making such a request to Fannie Mae in an Answer could be imputed to Shellpoint even if the request were not deficient.

7

pursuant to the FDCPA." (Doc. 1, ¶ 25). At best, that would trigger obligations for Fannie Mae under 1692(g) to provide verification of the debt. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 699 (11th Cir. 2015) ("If a consumer notifies the debt collector that any portion of the debt is disputed, the FDCPA requires the debt collector to cease collection activities until it provides verification of the debt to the consumer. *Id.* § 1692g(b)."). Because the Complaint only alleges that Bonanno's foreclosure Answer disputed the debt, Bonanno has not stated a claim under section 1692c(c).

Second, Bonanno appears to argue that her verbal notice to Shellpoint was sufficient.[2] This allegations clearly fails because the FDCPA requires the notice to cease and desist communications be *in writing*. So any verbal command to cease and desist would not give rise to a violation of section 1692c(c).

So the Court concludes Bonanno has not made sufficient allegations that Shellpoint violated the FDCPA's cease and desist requirement because Bonanno did not allege she told Shellpoint in writing that she refused to pay the debt or that she wanted Shellpoint to cease and desist communications.

### 4. Bonanno Failed to Allege Facts that Shellpoint's Calls Were Harassing

"Under § 1692d, a debt collector 'may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.'" *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir.

---

[2] It is unclear if Bonanno is actually alleging this in the Complaint. Paragraph 31 says Bonanno told Shellpoint or its predecessors to cease and desist communication on three occasions, but those occasions are not set forth. Other than the Answer, the only other communication Bonanno alleges she had with Shellpoint is the phone call with Jessie. (Doc. 1, ¶ 28).

2015) (quoting 15 U.S.C. § 1692d). The statute specifically prohibits, "Causing a telephone to ring … repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Courts view claims under section 1692d "from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). The same is true of section 559.72(7), Florida Statutes. *Segal v. Nat'l Action Fin. Servs., Inc.*, No. 8:04 CV 2388 T 30MAP, 2006 WL 449176, at *2 (M.D. Fla. Feb. 22, 2006) (analyzing section 559.72(7), Fla. Stat., in conjunction with 15 U.S.C. § 1692d(5)).

Bonanno's Complaint lacks sufficient facts for the Court to conclude that Shellpoint violated section 1692d. The Complaint only alleges that Shellpoint made "multiple calls" to Bonanno.[3] (Doc. 1, ¶¶ 64, 71). Only alleging that there were "multiple" calls, which could mean as few as two, is insufficient to show the calls were made repeatedly or continuously as required by section 1692d. So the Court concludes Bonanno has not alleged sufficient facts to state a plausible claim under section 1692d or section 559.72(7).

### 5. Shellpoint's Argument that Mortgage Permitted Late Charges Is Inappropriate at this Stage of Proceedings

Shellpoint argues that Bonanno's claim that it inappropriately assessed late charges should be dismissed because the late charges were expressly permitted by the mortgage. The argument lacks any analysis supporting Shellpoint's conclusion. Bonanno, on other

---

[3] Bonanno alleges Shellpoint made calls over the last four years. (Doc. 1, ¶42). But Shellpoint only began servicing the debt in May 2016, approximately a year before the lawsuit was filed. (Doc. 1, ¶ 26). So it is facially impossible that calls were made for four years.

9

hand, argues the mortgage does not expressly permit late charges and that Florida law prohibits them entirely. At this stage, the Court lacks sufficient facts and briefing to make the determination Shellpoint requests. So the Court concludes this argument should be denied for the purposes of the Motion to Dismiss. But the Court does not foreclose Shellpoint from making this argument at the summary judgment stage when the facts and law will have been more thoroughly briefed for the Court.

6. **Bonanno Not Entitled to Punitive Damages or Injunctive Relief under FDCPA**

Shellpoint argues Bonanno's punitive damages and injunctive relief claims under the FDCPA should also be dismissed. The Court agrees. Damages exceeding the $1,000 cap in section 1692k(a)(2)(A) are not allowed. *Lee v. Sec. Check, LLC*, No. 309-CV-421-J-12TEM, 2009 WL 2044687, at *2 (M.D. Fla. July 10, 2009) (citing to several decisions reaching the same conclusion). Neither is equitable relief in the form of an injunction. *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982).

7. **Bonanno Failed to Allege How TCPA Applies to Calls to Her Landline**

The TCPA prohibits making calls "using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellular phone "or any service for which the called party is charged for the call," with a few exceptions. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA also prohibits making a call "to any residential telephone line using an artificial or prerecorded voice to deliver a message," subject to certain exceptions. § 227(b)(1)(B).

Bonanno is suing Shellpoint solely under section 227(b)(1)(A)(iii), according to the Complaint (Doc. 1, ¶¶ 38 and 68), even though she alleges Shellpoint called her cellular and landline phones. (Doc. 1, ¶¶ 2, 35, 42, 59, 68–69, and 71). Bonanno failed to allege why calls to her landline phone would be a violation of the TCPA under section

228(b)(1)(A)(iii) since calls to a landline are generally subject to violations of section 227(b)(1)(B) instead. So the Court concludes the allegations related to calls to Bonanno's landline phone do not give rise to a TCPA violation as currently pleaded.[4]

### 8. Bonanno Failed to Allege Shellpoint Used ATDS, PTDS, or APV

Shellpoint also argues Bonanno did not plead a factual basis that an ATDS, PTDS, or APV was used to make calls to Bonanno. Bonanno argues the decisions on which Shellpoint relies elevate the pleading standard under Federal Rule of Civil Procedure 8. The Court agrees with Shellpoint and rejects Bonanno's argument that the Court is holding her to a higher pleading standard. Merely alleging Shellpoint made calls "using an automated dialing system, using an artificial or prerecorded voice, or using both" does not create any inference "supporting the allegation that calls were made using an automatic dialing system, and are insufficient to state a facially plausible claim. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir.2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."); *see also Fleming v. Diversified Consultants, Inc.*, No. 8:14-CV-2196-T-30, 2014 WL 6747150, at *1 (M.D. Fla. Nov. 26, 2014); and *Hunter v. Diversified Consultants, Inc.*, No. 8:14-CV-2198-T-30, 2014 WL 6747153, at *1 (M.D. Fla. Nov. 26, 2014). As such, the Court concludes Bonanno has failed to allege a plausible claim that Shellpoint used an ATDS, PTDS, or APV when calling her.

---

[4] If Bonanno amends her Complaint, she has leave to clarify why calls to her landline violate section 47 U.S.C. § 227(b)(1)(A)(iii), or specify that the calls to her landline violate a different subsection of the TCPA.

11

**9. Bonanno Not Entitled to Compensatory Damages under TCPA**

Shellpoint next argues that Bonanno is not entitled to compensatory damages under the TCPA. Bonanno did not respond to this argument. To the extent Bonanno is requesting compensatory damages in addition to actual or statutory damages, the Court agrees. *See* 47 U.S.C. § 227(b)(3) (allowing a plaintiff to recover "actual monetary loss" or $500 per violation, whichever is greater).

**10. Shellpoint's Argument that TCPA Does Not Apply Because Calls Related to Debt Owed to U.S.A. Is Inappropriate at this Stage of Proceedings**

Finally, Shellpoint claims that all of its calls to Bonanno fall within an exception to the TCPA because the calls were to collect a debt owed to or guaranteed by the United States. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Shellpoint argues, "Because the Federal Housing Finance Agency has placed Fannie Mae into conservatorship effective September 6, 2008—becoming the successor to Fannie Mae, *see* 12 U.S.C. § 4617(b)(2)(A)(i)—calls placed to collect for Fannie Mae are exempted from TCPA." (Doc. 20, p. 10). Bonanno, though, argues that Fannie Mae assigned the debt to MTGLQ Investors, LP in June 2016, shortly after the debt was transferred to Shellpoint for servicing. (Doc. 23, p. 17).

This conflict raises too many factual questions to be addressed at the motion to dismiss stage—especially since it relies on facts that are outside the four corners of the Complaint. So the Court denies the motion as to this issue without prejudice to Shellpoint raising it again at the summary judgment stage if appropriate.

Accordingly, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion to Dismiss Complaint, or Alternatively for a More Definite Statement (Doc. 20) is GRANTED IN PART.

2. The Complaint is DISMISSED WITHOUT PREJUDICE.

3. Plaintiff Bonanno may file an amended complaint within fourteen (14) days of the date of this Order, otherwise this case will be administratively closed without further notice.

**DONE** and **ORDERED** in Tampa, Florida, this 28th day of July, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record